IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| PATRICIA HART, | : | |
| Plaintiff, | : | |
| | | Case No. 3:08cv00191 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.   INTRODUCTION

Various health problems led Plaintiff Patricia Hart to twice file for Supplemental Security Income (SSI). She filed her most recent SSI application on June 25, 2003 claiming that beginning on March 8, 1998, she was under a "disability" within the meaning of the Social Security Act.  (Tr. 66-68).  The Social Security Administration denied Plaitniff's SSI application at each stage of administrative review.

The most significant stage for present purposes involved a hearing before, and subsequent written decision by, Administration Law Judge (ALJ) Melvin A. Padilla. Concluding that Plaintiff's medical problems did not constitute a "disability" within the meaning of the Social Security Act, ALJ Padilla denied Plaintiff's SSI application.  (Tr. 19-33).  ALJ Padilla's non-disability decision is subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

#9), the Commissioner's Memorandum in Opposition (Doc. #11), the administrative record, and the record as a whole.

Plaintiff seeks a remand of this case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II.     ADDITIONAL BACKGROUND

### A.     Plaintiff and Her Testimony

At the time of the ALJ's decision, Plaintiff's age (forty nine years old) placed her in the category of a "younger person" for purposes of resolving her benefits application. *See* 20 C.F.R. §416.963(c); *see also* Tr. 32, 62. She has a high-school education and has worked as a deli worker and a merchandise displayer/hand packager. (Tr. 92, 332). Plaintiff explained during the ALJ's hearing that she last worked in May 1999 as a deli worker, a job that she held for a year and a half. (Tr. 317).

Plaintiff testified that she is under a "disability" due to low back pain, numbness and swelling in her left leg, and carpal tunnel syndrome in both hands. (Tr. 317-21). She asserted that she has constant stabbing pain in her low back that makes it difficult for her to stand. She further asserted that the carpal tunnel syndrome causes numbness in her hands and that sometimes her hands "feel frostbitten." (Tr. 319). She continues to see her primary care doctor, Dr. Bennett for her back pain. (Tr. 318).

Plaintiff estimated that she could walk, stand, or sit for one hour each before needing a break. (Tr. 322). She stated she could only lift five pounds. (Tr. 323). Her family helps her get dressed because she has trouble both with her back and hands while getting dressed. (Tr. 329).

As to her daily activities, Plaintiff testified that she cooks using a microwave, makes her bed, goes out to eat once a month, attends church once a week, and watches television. In the mornings she makes sure her six-year-old granddaughter gets up for school. Her granddaughter makes her own breakfast. After school, Plaintiff helps her with homework. (Tr. 327-28). Plaintiff's family members clean the dishes and perform

other household chores. (Tr. 324). Plaintiff does not do household chores, such as mopping, because the back and forth movement hurts her back. She stated she does not clean the dishes because things keep dropping out of her hands. (Tr. 330). She has no hobbies, does not go to the movies, and does not exercise. Plaintiff had a driver's license at one point, but she let it expire because she had difficulty holding the steering wheel, turning to look at traffic, and pressing down on the accelerator. (Tr. 328).

She attended physical therapy three times but it did not help her. *Id*. Plaintiff testified that she takes three medications – Vicodin, Zanaflex, Lyrica – for back pain. She suffers nausea from these medications and takes other prescription medications to treat her nauseousness.

### B. Medical Source Opinions

**1.**

Dr. Bennett was Plaintiff's her primary care physician from February 2000 through at least 2005. She treated Plaintiff for lumbar disc bulging, lumbar and thoracic spine pain, leg pain and numbness, carpal tunnel syndrome, osteoarthritis, peripheral neuropathy, anemia, and left rotor cuff tear. (Tr. 204-13, 256-59, 279-80).

In June 2003 Dr. Bennett completed a form in which she checked boxes indicating her opinion that Plaintiff was "unemployable" for twelve months or more. (Tr. 206-07). Dr. Bennett also checked boxes indicating that Plaintiff could lift/carry up to five pounds occasionally and frequently. (Tr. 207). And, according to Dr. Bennett, Plaintiff's ability to push/pull, bend, reach, and handle was extremely limited. *Id*. Dr. Bennet noted that Plaintiff had the chronic conditions of lumbar radiculopathy, carpal tunnel syndrome, peripheral neuropathy, insomnia, gastroesophageal reflux, and varicose veins. (Tr. 206). The record contains two additional forms completed by Dr. Bennet with the same opinion. (Tr. 208-11). The dates of these two additional opinions are unclear. *See id*.

In August 2004 Dr. Bennett completed a form concerning Plaintiff's mental work limitations. Dr. Bennet found Plaintiff to be extremely limited in numerous areas

3

including, for example, her ability to understand and remember detailed instructions and her ability to concentrate for extended periods of time. (Tr. 254). Dr. Bennett concluded that Plaintiff's mental work limitations caused her to be "unemployable" for nine-to-eleven months. (Tr. 255).

In August 2005 Dr. Bennett completed a form indicating that Plaintiff's physical health problems rendered her "unemployable" from nine to twelve months. (Tr. 278-80). Dr. Bennett noted that Plaintiff had peripheral neuropathy, leg pain, lumbar bulging disc, claudication,[2] carpal tunnel syndrome, gastroesophageal reflux, left rotator cuff tear, and anemia. (Tr. 279). And Dr. Bennett believed that Plaintiff was extremely limited in her ability to push/pull, bend, reach, and engage in repetitive foot movements. (Tr. 280).

On March 13, 2006, Dr. Bennett reported that Plaintiff's arthritis and carpal tunnel syndrome limited her ability to lift or carry more than five pounds. (Tr. 282-93). Dr. Bennett further reported that Plaintiff's bulging lumbar disc, numbness, and pain would limit walking, standing, and sitting to one hour in an eight-hour day. (Tr. 283). Dr. Bennett opined that Plaintiff could not grasp, push/pull, or perform fine manipulation on even an occasional basis. (Tr. 284-85). Dr. Bennett believed that Plaintiff could never stoop, crouch, or crawl, and she had the ability to kneel occasionally. (Tr. 285). Dr. Bennett concluded that Plaintiff did not have the residual functional capacity to sustain sedentary work on a full-time basis. (Tr. 287-88, 293).

**2.**

In February 2000 Aivars Vitols, D.O., an orthopedic surgeon, evaluated Plaintiff for pain in both shoulders (right slightly worse than left). (Tr. 155). Dr. Vitols diagnosed a bilateral anterior impingement syndrome. *Id.* Dr. Vitols treated Plaintiff's shoulder injuries with Indocin, noting that if it did not help, she "will return for recheck." (Tr. 156).

---

[2] "Claudication" refers to lameness due to cramping or pain in leg muscles after a predictable amount of walking. Taber's Cyclopedic Medical Dictionary at 414-15 (19th Ed. 2001).

4

An MRI of Plaintiff's right shoulder taken in August 2000 revealed a rotator cuff tear. (Tr. 153). After conservative treatment failed, Dr. Vitols performed a subacromial decompression of the right shoulder on June 1, 2001. (Tr. 143-46).

By August 2001 Plaintiff had "excellent" full motion, and she was actively able to raise her arm with some weakness. (Tr. 151). But in September 2001 Plaintiff continued to complain about right shoulder pain, and she reported that physical therapy increased her right shoulder pain. Dr. Vitols injected her shoulder with cortisone and prescribed Darvocet. (Tr. 148).

Plaintiff also complained of left shoulder pain. (Tr. 149). She underwent a left shoulder radiography in August 2001, which revealed no abnormalities. (Tr. 149).

Dr. Vitols performed a consultative examination of Plaintiff for the Ohio Bureau of Disability Determination (Ohio BDD) in August 2003. (Tr. 196-203). Plaintiff complained of pain in her mid and lower back, her lower extremities, and in her left shoulder and arm. (Tr. 196). Dr. Vitols' examination revealed that Plaintiff's gait was normal, and she used no assistive devices. She had full range of motion in both shoulders with no crepitus, no areas of muscle tenderness, no muscle spasms, and no instabilities left of right. (Tr. 198). Straight leg testing proved negative. *Id*. Plaintiff's range of cervical spine motion was minimally restricted and she demonstrated no evidence of myospasm. *Id*.

Dr. Vitols found Plaintiff able to grasp and manipulate with both hands satisfactorily, and her pinch and grip were intact and equal. Upon strength testing, Dr. Vitols questioned Plaintiff's effort and determined that the results of this portion of the examination were unreliable. (Tr. 200). Dr. Vitols diagnosed cervical sprain and strain, lumbar sprain and strain, lumbar facet arthrosis, exogenous obesity, and hypertension. (Tr. 199). Dr. Vitols concluded that while the plaintiff had some restricted motion in her cervical and lumbar spine associated with pain, she showed no motor or sensory changes in all four extremities. (Tr. 199).

**3.**

Ron Koppenhoefer, M.D., a specialist in physical medicine and rehabilitation, consultatively examined Plaintiff in October 2005 at the request of the Ohio BDD. (Tr. 260-70). Plaintiff complained of constant and sharp low back pain primarily on her left side. (Tr. 260). She also complained of constant neck pain. She explained to Dr. Koppenhoefer that she was told she had left rotator cuff pain and bilateral carpal tunnel syndrome. *Id.* Dr. Koppenhoefer listed eleven medications Plaintiff was taking, including Hydrocodone, Zanaflex, and Diovan. (Tr. 261).

Dr. Koppenhoefer's examination revealed that Plaintiff's gait was stable with no weakness. (Tr. 261). She exhibited a decreased range of motion of her cervical spine and upon abduction and forward flexion. *Id.* Plaintiff's lumbar spine range of motion appeared limited due to pain, but straight leg raising tests were normal. *Id.* Dr. Koppenhoefer also noted generalized discomfort upon palpitation of the left shoulder which was not confined to the rotator cuff area. *Id.* There was no apparent shoulder atrophy. *Id.* Plaintiff's upper extremity reflexes were symmetric, her sensation was intact, and she had no atrophy. *Id.*

Dr. Koppenhoefer noted that Plaintiff demonstrated a give away response to manual muscle testing and inconsistent grip strength. (Tr. 262). Examination of the upper extremities demonstrated a full range of motion in her elbows and wrists along with no evidence of synovitis or swelling. (Tr. 261). Plaintiff had a full range of motion in the hand joints and there was no evidence of atrophy or fasciculation. (Tr. 262). Plaintiff demonstrated a normal ability to grasp, manipulate, pinch, and perform fine coordination with both hands. *Id.* Neurological testing was normal with intact sensation and symmetrical reflexes, as well as no atrophy, muscle spasm, or abnormal reflexes. *Id.* Dr. Koppenhoefer determined that Plaintiff had mild degenerative changes affecting the cervical and lumbosacral spine, bilateral shoulder pain, and a past diagnosis of bilateral carpal tunnel syndrome. (Tr. 262-63).

> Dr. Koppenhoefer wrote in part:
>
> > Based on my examination, Ms. Hart presents with pain emanating from the cervical and lumbosacral spine. The best etiology for this would be mild degenerative or aging changes. I was unable to document an acute or chronic radiculopathy involving the cervical/lumbosacral area at this time. Based on her subjective complaints, she would have some limitations in regards to lifting and carrying. I believe these limitations would restrict her to approximately 35 lbs. on an occasional basis.

(Tr. 263). Considering Plaintiff's cervical and lumbosacral degenerative/aging changes along with her shoulder pain and her repaired right rotator cuff tear, and her carpal tunnel syndrome, Dr. Koppenhoefer wrote:

> It is my opinion that standing and walking would no[t] be affected by her limitations. Siting would not be affected. She should be able to sit in an 8 hour day with a change of position on occasion[al] basis for comfort purposes.
>
> I believe she would have some limitations in regards to climbing which should be done on an occasional basis as well as bowing, stooping, crouching, kneeling and crawling. This is based on her subjective complaints of neck/back pain as well as her bilateral shoulder pathology.

(Tr. 263).

### III. THE "DISABILITY" REQUIREMENT AND ADMINISTRATIVE REVIEW

The Social Security Administration provides SSI to indigent individuals, subject to several eligibility requirements. Chief among these is the "disability" requirement. To receive SSI an applicant must be a "disabled individual." 42 U.S.C. §1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).

The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. 42 U.S.C. §1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70. An SSI applicant bears the ultimate burden of establishing that he or she

is under a disability. *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 20-21; *see also* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

## IV. THE ALJ'S DECISION

The ALJ determined at Step 1 of the sequential analysis that Plaintiff had not been engaged in any substantial gainful activities at any time since her alleged onset date of March 8, 1998. (Tr. 22).

At Step 2 the ALJ determined that Plaintiff suffered from the severe impairments of mild cervical and lumbar degenerative disc disease; bilateral carpal tunnel syndrome

with full range of motion and negative Tinel's sign[3], and a history of shoulder problems with residuals of right shoulder surgery. *Id.*

The ALJ determined at Step 3 that Plaintiff does not have an impairment or combination of impairments that meet or equal the level of severity of an impairment in the Listings. (Tr. 28).

At Step 4 the ALJ found that the Plaintiff has the Residual Functional Capacity to perform a limited range of medium exertional work.[4] (Tr. 28). Specifically the ALJ determined that Plaintiff could sit, stand, and walk without limitation; occasionally lift up to thirty-five pounds; and occasionally reach overhead, climb, balance, stoop, kneel, crouch and crawl. *Id.* The ALJ further found at Step 4 that Plaintiff was able to perform her past relevant work as a deli worker. (Tr. 31).

The ALJ alternatively concluded that at Step 4 that Plaintiff may be able to perform her past relevant work. With this alternative conclusion in mind, the ALJ continued his alternative evaluation to Step 5, finding that, given her Residual Functional Capacity (along with her age and educational status), she could perform a significant number of jobs existing in the regional and national economies.

Based on his findings throughout the sequential evaluation, the ALJ ultimately concluded that Plaintiff was not under a disability and was therefore not eligible to receive SSI.

## V. JUDICIAL REVIEW

Judicial review of an ALJ's decision focuses in part on whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v.*

---

[3] "Tapping over the median nerve at the wrist may cause pain to shoot from the wrist to the hand. This is called Tinel's sign." http:www.nlm.nih.gov/medlineplus (search: "Tinel").

[4] Under the Regulations, "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567(c).

9

*Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Judicial review for substantial evidence is deferential not *de novo*. *See Cruse v. Commissioner of Social Sec*. 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record – if other substantial evidence supports the ALJ's findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Reviewing for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ did not, the decision may not be upheld even when substantial evidence supports the ALJ's findings. *See id.* For example, a decision will not be upheld where the ALJ failed to apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein). Through *Bowen* and other recent Sixth Circuit cases, an ALJ's failure to apply the correct legal criteria – at least when evaluating medical source opinions – mandates further judicial review for harmless error. *Bass II v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007); *see Bowen*, 478 F.3d at 747-49; *see also Wilson*, 378 F.3d at 547-49 (offering examples of possible *de minimis* errors). Consequently, if the ALJ erred by not applying the correct legal criteria but the error was

10

harmless, the decision should be affirmed. *See Bass II*, 499 F.3d at 512 (and cases cited therein).

VI. **DISCUSSION**

A. **The Parties' Contentions**

Plaintiff contends that the ALJ erred by rejecting the disability opinion of her long-time treating physician Dr. Bennett, who on several occasions opined that Plaintiff lacked the Residual Functional Capacity to sustain even sedentary work on a full-time basis. Plaintiff reasons that the ALJ merely evaluated whether Dr. Bennett's opinion deserved controlling weight without considering whether Dr. Bennett's opinion deserved any significant weight under the remaining factors of the Regulations. Plaitniff further contends that the ALJ's error leaves his decision without "good reasons" for rejecting Dr. Bennett's opinion, in contrast to the Regulations and case law.

In addition, Plaintiff contends that the ALJ erred by rejecting certain aspects of Dr. Koppenhoefer's evaluation of the record based on the ALJ's own lay interpretation of medical issues.

The Commissioner contends that the ALJ reviewed the entire administrative record, properly assessed Plaintiff's Residual Functional Capacity, reasonably rejected Dr. Bennett's conclusory opinions, and properly relied on the opinions provided by Drs. Vitols and Koppenhoefer.

B. **Medical Source Opinions**

The treating physician rule, when applicable, requires ALJs to place controlling weight on a treating physician's opinion rather than favoring the opinion of a nonexamining medical advisor, or an examining physician who saw a claimant only once, or a medical advisor who testified before the ALJ. *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. §416.927(d)(2), (e), (f). A treating physician's opinion is given controlling weight only if it is both well supported by

medically acceptable data and if it is not inconsistent with other substantial evidence of record. *Wilson*, 378 F.3d at 544; *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *see also* 20 C.F.R. §416.927(d)(2).

If a treating physician's opinion is not given controlling weight, then it must be weighed against other medical source opinions under a number of factors set forth in the Commissioner's Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. §416.927(d)(2)).

More weight is generally placed on the opinions of examining medical sources than on the opinions of non-examining medical sources. *See* 20 C.F.R. §416.927(d)(1). Yet the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p, 1996 WL 374180. Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. §416.972(d), (f).

### C. <u>Analysis</u>

Returning to the ALJ's decision in the present case, the ALJ correctly described the legal criteria applicable to determining whether a treating physician's opinion is due controlling weight. *See* Tr. 29. The ALJ then applied that legal criteria and concluded that "Dr. Bennett's opinions as to her client's functional capabilities or disability status cannot be given controlling, or even great weight...." (Tr. 29). In this manner, the ALJ

applied the correct legal criteria under the treating physician rule and, therefore, did not commit an error of law.

Plaintiff is correct, however, that the ALJ erred by not continuing to weigh Dr. Bennett's opinions under the legal criteria required by the Regulations, specifically 20 C.F.R. §416.927(d)(3)-(5). This is so because the ALJ's reasons for rejecting Dr. Bennett's opinions referred only to the legal criteria applicable under the treating physician rule. This is first seen in the ALJ's statement that Dr. Bennett's opinion was "neither well-supported by medically-acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence of record" (Tr. 29-30) – referring to the legal criteria applicable to determining whether Dr. Bennett's opinions deserved controlling weight, *see* 20 C.F.R. §416.927(d)(2); the ALJ then tied his remaining discussion of Dr. Bennett's opinion to those standards. He wrote:

> Dr. Bennett's assessment are, for the most part, non-specific. No findings supporting the assigned limitations are stated, other than references to imaging studies. There are no treatment notes which might provide a basis for any of the assessments. Dr. Bennett's opinion as to the claimant's physical functional capacity is obviously contrary to those of Dr. Koppenhoefer and Dr. Vitols, as well as BDD Medical Consultants. Based on the foregoing, Dr. Bennett's opinions cannot be given much, if any, weight....

(Tr. 30). Nowhere in this discussion or his entire decision did the ALJ provide a clear explanation of the required two-step weighing procedure demanded by the Regulations. *See* 29 C.F.R. §419.927(d)(2)-(5). Although the ALJ's rejection of Dr. Bennett's opinion speaks in terms reflected in the Regulations, *see* Tr. 29-30, the ALJ derives his reasons from the legal criteria in §419.927(d)(2), without continuing to weigh Dr. Bennett's opinions. As the United States Court of Appeals for the Sixth Circuit has explained, "When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of other factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and

consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status nothwithstanding." *Rogers*, 486 F.3d at 242; *see Wilson*, 378 F.2d at 544. Because the ALJ's decision omits mention of which of these additional factors led him to reject Dr. Bennett's opinions, the ALJ erred as a matter of law by failing to apply the correct legal criteria when weighing this treating physician's opinions and by not providing "good reasons" for rejecting her opinions. *See* §416.927(d)(2)-(5); *see also Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544.

This does not end the analysis, however, because there remains the possibility that the ALJ's error was harmless. *See Bass II*, 499 F.3d at 510. There are only limited circumstances where an ALJ's error in failing to heed the mandatory procedural requirements of §416.927(d)(2)-(5) was harmless. "A court cannot excuse the denial of a mandatory procedural protection simply because ... there is sufficient evidence in the record for the ALJ's to discount the treating physician's opinion and, thus, a different outcome on remand is unlikely." *Wilson*, 378 F.3d at 546. Yet a *de minimis* violation of certain mandatory regulatory procedures might qualify as harmless error. "For instance, if a treating physician's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe §1527(d)(2) [or §416.927(d)(2)] may not warrant reversal." *Wilson*, 378 F.3d at 547.

A review of Dr. Bennett's opinions finds them completely lacking in any supporting explanation or reference to objective medical testing. *See, e.g.*, Tr. 206-11, 254-55, 278-80, 282-93. Dr. Bennett provided her opinions by simply checking various boxes on the forms she completed without supporting them with any explanation. For example, she checked boxes on a form in June 2003 indicating that Plaintiff could only lift five pounds occasionally and that she was "extremely limited" in her ability to push/pull, bend, reach, and handle without providing any information in the space

14

designated for supporting observations or medical evidence. (Tr. 207). The administrative record, moreover, does not contain any treatment notes written by Dr. Bennett that might have arguably buttressed the opinions she expressed in the forms she completed. Because the forms Dr. Bennett completed completely lack explanations for her opinions about Plaintiff's work abilities and her "unemployability," Dr. Bennett's opinions are so patently deficient for social security purposes that the ALJ could not possibly credit them on remand.

Plaintiff next contends the ALJ rejected a significant aspect of Dr. Koppenhoefer's opinion – specifically Dr. Koppenhoefer's opinion that Plaintiff had only the occasional ability to engage in the work activity of handling. (Tr. 263). The ALJ did not err by not adopting Dr. Koppenhoefer's grasping limitations because substantial evidence – Dr. Vitols' records – supports this aspect of the ALJ's decision. The record reflects that Dr. Vitols considered the muscle testing to be unreliable because he questioned her "grip effort" during testing. *See* Tr. 200. The record also supports, as the ALJ found, Dr. Vitols conducted testing during which Plaintiff demonstrated a full range of motion of the shoulders, elbows, wrists, hands, and fingers. *See* Tr. 29, 201. And, as the Commissioner correctly notes, the ALJ placed less weight on Plaintiff's subjective reports of grip limitation due to the findings of Drs. Vitols and Koppenhoefer that Plaintiff's grip strength test results were unreliable due to her poor effort. *See* Tr. 198, 261-62. Substantial evidence therefore supported the ALJ's reasons for concluding that Plaintiff's grip strength was not significantly limited.

Plaintiff also asserts that the ALJ erred by substituting his own lay interpretations of the record for that of the medical expert. "[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *see Meece v. Barnhart*, 2006 WL 2271336 at *8 (6th Cir. 2006). The ALJ in the present case did not commit this error. He discussed and relied on various medical source opinions of record at steps 2 through 4

15

of his sequential evaluation, and in doing so, he did not insert his own lay medical opinion in place of medical source opinions on medical issues. *See* Tr. 28-30. Plaintiff, moreover, has not established that the ALJ erred as a matter of law in weighing those medical source opinions or that substantial evidence did not support the opinions of these medical sources. Without such a showing, the Court is not free to re-weigh the medical source opinions or to resolve other evidentiary conflicts. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)("there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."); *see also Her v. Commissioner of Social Security,* 203 F.3d 388, 389-90 (6th Cir.1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

Accordingly, for all the above reasons, Plaintiff's Statement of Errors lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final non-disability determination be affirmed; and

2. The case be terminated on the docket of this Court.


June 30, 2009                                      s/Sharon L. Ovington
                                                   Sharon L. Ovington
                                          United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).